The Honorable David Rainey State Representative Post Office Box 642 Dumas, AR 71639-0642
Dear Representative Rainey:
I am writing in response to your request for my opinion on the following questions:
 1. Whether ACA 6-17-1703(b) requires the superintendent of a school district to make a "recommendation of non-renewal" to the school board
no later than 30 days prior to the beginning of the employee's next contract period, or whether this requirement merely refers to the written notice that must be sent to the employee?
 2. Assuming the phrase "recommendation of non-renewal" as used in Section (b) does refer to a recommendation to the school board, would it be proper for the superintendent to advise the school board of the reasons for the recommendation in view of the fact that the board may subsequently be called upon to hold a hearing on the recommendation?
RESPONSE
With respect to your first question, notwithstanding the fact that a literal reading of A.C.A. § 6-17-1703(b) might dictate a contrary conclusion, I do not believe the statute obligates a school district superintendent to make a "recommendation of nonrenewal" to the school board at least 30 days prior to the beginning of what would otherwise be the employee's next contract period. Rather, I believe the referenced deadline marks the cut-off point for notifying the employee of the recommendation. When subsection (b) is read within the context of the entire Public School Employee Fair Hearing Act (the "Act"), A.C.A. §§6-17-1701 through -1705 (Repl. 1999), I believe it is apparent that the legislature intended the term "recommendation of nonrenewal" to refer to the notice of recommendation provided by the superintendent to the employee. However, legislative clarification regarding this issue is warranted. Although my opinion renders your second question moot, I will note that I do not believe it would be objectionable for a superintendent prior to a hearing to tender a written recommendation of nonrenewal to the board itemizing the bases for his recommendation.
Question 1: Whether ACA 6-17-1703(b) requires the superintendent of aschool district to make a "recommendation of non-renewal" to the schoolboard no later than 30 days prior to the beginning of the employee's nextcontract period, or whether this requirement merely refers to the writtennotice that must be sent to the employee?
In my opinion, A.C.A. § 6-17-1703(b) is extremely ill-drafted in that, if read literally, it appears to mandate that a school district superintendent recommend to the school district board the nonrenewal of a school district employee's contract no later than 30 days before the expiration of the employee's current contract. Read in the context of the entire Act, however, I believe it is clear that the legislature intended in this subsection to mandate that notice to the employee of the superintendent's recommendation occur at least 30 days before the expiration of the employee's current contract. Legislative clarification regarding this issue appears warranted.
Section 6-17-1703 of the Code (Repl. 1999), which is contained in the Public School Employee Fair Hearing Act (the "Act"),[1] A.C.A. §§6-17-1701 through -1705 (Repl. 1999), provides as follows:
 (a) The superintendent of a school district may recommend termination of an employee during the term of any contract or the nonrenewal of a full-time nonprobationary employee's contract provided that he gives notice in writing, personally delivered, or by letter posted by registered or certified mail to the employee's residence address as reflected in the employee's personnel file.
 (b) The recommendation of nonrenewal of a full-time nonprobationary employee's contract shall be made no later than thirty (30) calendar days prior to the beginning of the employee's next contract period.
 (c) Such written notice shall include a statement of the reasons for the proposed termination or nonrenewal.
 (d) The notice shall further state that an employee being recommended for termination or a full-time nonprobationary employee being recommended for nonrenewal is entitled to a hearing before the school board upon request provided that the request is made in writing to the superintendent within twenty-five (25) calendar days from receipt of the notice.
 (e) It is the public policy of the State of Arkansas that employees, as defined in this subchapter, shall not be considered" at will" employees with regard to the termination of their employment, notwithstanding any contractual provision to the contrary.
(Emphases added.)
In interpreting this statute, I am guided by various principles of statutory construction. First, the cardinal rule is to give full effect to the will of the legislature. Flowers v. Norris, 347 Ark. 760, 765,68 S.W.3d 289, 292 (2002) ("It is . . . axiomatic that in statutory interpretation matters, we are first and foremost concerned with ascertaining the intent of the General Assembly.") (citing State v.Havens, 337 Ark. 161, 987 S.W.2d 686 (1999)). Moreover, as the court noted in The Bank of Eureka Springs v. Evans, 353 Ark. 438, 450-51,109 S.W.3d 672 (2003):
 We have also said that literal meaning yields to legislative intent if the literal meaning leads to absurd consequences contrary to legislative intent. E.g., Burford Distributing, Inc. v. Starr, 341 Ark. 914, 20 S.W.3d 363 (2000).
As the court further noted in Ark. Gazette Co. v. Pickens, 258 Ark. 69,74, 522 S.W.2d 350 (1975):
 In construing legislation and Constitutional provisions, it is the duty of the courts to ascertain and give effect to the intent of the framers and to the people who adopted it, even though the true intention, though obvious, has not been expressed by the language employed when given its literal meaning; that the courts are confined to the real purpose and intention of the language rather than to the literal verbiage employed; that the reason, spirit, and intention of the legislation or Constitutional provision shall prevail over its letter; that this rule of construction is especially applicable where adherence to the letter would result in absurdity or injustice, or would lead to contradiction, or would defeat the plain purpose of the law.
The above recited A.C.A. § 6-17-1703(b) is absolutely unambiguous in mandating that a "recommendation of nonrenewal" be made no later than 30 days before the beginning of the subject employee's next contract period. You have asked in your question whether this provision requires the superintendent to make a recommendation of nonrenewal to the school board within this time frame, as distinct from informing the employee within this time frame of his intention to make the recommendation. In my opinion, if read literally, the quoted term would impose upon the superintendent a duty to make a recommendation to the school board within the recited time frame, while leaving totally unaddressed what deadline might apply for notifying the employee of the recommendation. This conclusion follows from the use of the term "recommendation" in the statute. It is a non sequitur to suggest that a school-district superintendent would "recommend" to an employee the nonrenewal of that employee's contract. The referenced "recommendation" would qualify as such only if it took the form of a suggestion made by the superintendent to the board regarding job action against the employee. This recommendation would be logically distinguishable from the notice-of-recommendation provided to the employee.
However, as its name implies, the Public School Employee Fair Hearing Act is intent first and foremost on ensuring that the employee be afforded adequate notice to allow him to prepare for and to challenge the superintendent's recommendation. If A.C.A. § 6-17-1703(b) were read as only imposing a deadline by which a superintendent must make a recommendation of nonrenewal to the board, The Act would be totally silent on the question of how soon before a hearing a superintendent must notify an employee of a recommendation of nonrenewal[2] — a fact that in itself suggests that the legislature intended the deadline recited in A.C.A. § 6-17-1703 to apply to the written notice to the employee. Timely notice to the employee is, after all, of paramount importance in assuring due process, not notice to an administrative board that will presumably not even address the issues until a hearing takes place or the time to request a hearing has passed.[3] The legislative intent that the 30-day deadline apply to employee notification is further suggested in subsection (c) of the statute, which, immediately following the exclusive consideration in subsection (b) of the "recommendation of nonrenewal," refers back — apparently to the "recommendation" — as "such written notice. . . ." The only "written notice" referenced in A.C.A. § 6-17-1703
is the "notice in writing" to the employee mandated in subsection (a) of the statute. Moreover, the other deadlines set forth in the Act appear designed to ensure only that a recommendation of nonrenewal might be administratively resolved before the employee's current term of employment expires. Under the terms of A.C.A. § 6-17-1705, the board must conduct a hearing five to ten days from the date it receives an employee's written request therefor and it must issue its decision within ten calendar days of the hearing. Under these deadlines, assuming an employee is informed of the superintendent's recommendation at least 30 days before the expiration of his contract term, if he acts with dispatch, he will be assured of board action upon the recommended nonrenewal before his current contract runs its term. Logic suggests that in mandating the 30-day deadline set forth in A.C.A. § 6-17-1703(a), the legislature intended to allow of this possibility of closure prior to the end of the pending term of employment.
Any doubts as to whether the deadline set forth at A.C.A. § 6-17-1703(b) applies to the written notice to be provided a targeted employee were resolved by the Arkansas Supreme Court in Gould Public Schools v. Dobbs,338 Ark. 287, 287, 993 S.W.2d 500 (1999), which described as follows the application of the statute in the case of a full-time, nonprobationary employee who was afforded no notice of a decision not to renew her contract:[4]
 Subsections 6-17-1703(b), (c), and (d) provide in relevant part that the nonrenewal of a full-time, nonprobationary employee's contract shall be made no later than thirty days prior to the beginning of the employee's next contract, provide the reasons for the termination, and inform the employee that he or she is entitled to a hearing.
The reference to "the nonrenewal" in this passage was clearly intended to be to the notice of the superintendent's intention to recommend
nonrenewal — an interpretation confirmed by the court's closing reference to the information required to be included in the written notice pursuant to A.C.A. §§ 6-17-1703(c) and -1703(d). I believe this passage clearly confirms that the 30-day deadline recited in A.C.A. § 6-17-1703(b) applies to the written notice to the employee, not to any recommendation made by the superintendent to the board. However, given that the statute on its face appears to impose upon the superintendent a 30-day deadline for making his recommendation to the board,[5] legislative clarification appears warranted.
Question 2: Assuming the phrase "recommendation of non-renewal" as usedin Section (b) does refer to a recommendation to the school board, wouldit be proper for the superintendent to advise the school board of thereasons for the recommendation in view of the fact that the board maysubsequently be called upon to hold a hearing on the recommendation?
This question would appear to be moot in light of my response to your first question. However, I will note that I am unaware of any law or legal principle that would preclude a school district superintendent from providing a school board with a formal recommendation that a district employee's contract not be renewed for reasons specified in the recommendation. In my opinion, any such detailed recommendation would be analogous to a complaint in a judicial action, merely anticipating what will be alleged and what will remain to be established at the eventual hearing. I see no basis for assuming that any such document should be deemed to prejudice a school board acting in its tribunal capacity any more than a pleading should be deemed to prejudice a court.
In this regard, I will note that on at least two occasions, the Arkansas Supreme Court has held that under both the Act and the analogous Teacher Fair Dismissal Act, an employee's due process rights were not compromised when the employee was dismissed based upon preliminary information even before a hearing was held, following which the dismissal was rescinded and the employee was allowed to request a hearing. Small v. Cottrell,332 Ark. 225, 964 S.W.2d 383 (1998) (reaching this result under the Act with respect to a terminated school mechanic); Murray v. Altheimer-SherrillPublic Schools, 294 Ark. 403, 743 S.W.2d 789 (1988) (reaching this result under the Teacher Fair Dismissal Act with respect to a teacher whose contract was not renewed). In each of these two cases, the court held that the rescission of the original vote coupled with a cautionary instruction by district counsel directing the board to remain impartial during the impending hearing assured the employee of due process. Small,332 Ark. at 233-34; Murray, 294 Ark. at 408. Extrapolating from these cases, I do not believe a superintendent's simply detailing the bases for a recommendation of nonrenewal amounts to an affront to an employee's due process rights.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB/JHD:cyh
[1] The Act applies to employees who are not required to have a teaching certificate as a condition of employment. A.C.A. §6-17-1702(1). Certified employees are covered by the Teacher Fair Dismissal Act, A.C.A. §§ 6-17-1501 through -1510 (Repl. 1999 Supp. 2003).
[2] By contrast, the Teacher Fair Dismissal Act mandates that a teacher be notified by May 1 of his current contract year that the superintendent is recommending nonrenewal of the teacher's contract. A.C.A. §6-17-1506(A0(1).
[3] My inquiries reveal that school district superintendents do not, as a matter of general practice, provide their respective school boards with any formal recommendations of action by dates certain preceding board actions against employees. Rather, in each instance, if an employee requests a hearing, the superintendent will normally arrange for such a hearing and present the bases for his recommendation, which the employee may then rebut. If the employee does not request a hearing in timely fashion, the superintendent will appear at the next meeting of the board, which will then go into executive session to consider the superintendent's recommended action, thereafter announcing its decision in open session.
[4] It is not entirely clear whether the issue in Dobbs was the nonrenewal or the termination of an employee's contract. In its recital of the factual background, the court referred to the superintendent's sending a letter "terminating Dobbs' employment," thus prompting her to file suit. Id. The quoted passage suggests that the issue was a "termination," not a "nonrenewal," of her employment. However, the court also referred to the "nonrenewal" of her contract and expressly noted that while her employment commenced on August 18, 1994, the letter did not issue until July 27, 1995 — dates whose significance presumably resides in the fact that they establish that notice issued within 30 days of the time her employment contract would have run its term. The fact that the court applied A.C.A. § 6-17-1703(b), which only references the "nonrenewal" of a contract, suggests that Dobbs' contract was allowed to lapse.
Alternatively, assuming the letter was indeed one of immediate termination of employment, Dobbs may stand for the proposition that the provisions of A.C.A. § 6-17-1703(b) apply to terminations through the provisions of A.C.A. § 6-17-1703(a), which conditions a superintendent's recommending either nonrenewal or termination of employment upon the superintendent's providing notice. However, this alternative strikes me as strained, since it would entail simply ignoring the fact that A.C.A. § 16-17-1703(b) speaks only in terms of nonrenewals.
[5] My opinion that the legislature never intended to impose a time constraint on a superintendent's making a recommendation to the board draws support from the fact that the Act contains absolutely no guidance as to what form such a formal recommendation should take. As noted above, as a matter of practice that I consider consistent with the intent underlying the Act, the only "recommendation" a superintendent will normally make to the board is by the act of scheduling a date for an adversial hearing or by appearing at a board meeting to argue in favor of his recommendation in an executive session.